## BLACK *et al.* v. GEISSLER *et al.*

No. 8421.   Opinion Filed September 12, 1916.

(159 Pac. 1124.)

1.   **CONSTITUTIONAL LAW—Constitutionality of Statutes—Determination of Question.**   The Supreme Court will not pass upon the constitutionality of an act of the Legislature, nor of any of its provisions, until there is presented a proper case in which it is made to appear that the person complaining by reason thereof has been or is about to be denied some right or privilege to which he was lawfully entitled or who is about to be subjected to some of its burdens or penalties.

2.   **TAXATION—Collection—Injunction.** · Section 4881, Revised Laws 1910, which authorized the issuance of an injunction to restrain the illegal levy and collection of a tax, has been modified in respect to matters of taxation by section 7 of chapter 107, p. 149, Session Laws 1915, where an effectual remedy has been provided in such cases.

3.   **SAME—Remedies.**   It was within the power of the Legislature to enact said section 7, and the remedy therein provided is plain, speedy, and adequate, and is exclusive.

4.   **INJUNCTION—Existence of Other Remedy.**   By section 1, c. 117, Session Laws 1915, p. 169, any person aggrieved at the action of the board of county commissioners in allowing and ordering paid any claim against the county may appeal from the decision of the county commissioners to the district court upon filing a bond as therein required, and such remedy is plain, speedy, and adequate, and equitable relief by injunction against the apprehended action of the commissioners in the premises cannot be had.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*Edward Dewes Oldfield, Judge.*

Suit by Arthur H. Geissler against R. W. Black and others. A demurrer to the petition was overruled, and certain defendants bring error. Reversed, and cause dismissed.

S. P. Freeling, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for plaintiffs in error.

Parker & Simons, for defendants in error.

HARDY, J.    Arthur H. Geissler filed suit in the district court of Oklahoma county seeking an injunction against the board of county commissioners, the members of the excise board, the county assessor, the county treasurer, and the county registrar seeking to restrain them from performing certain acts devolved upon them by chapter 24, Session Laws 1916, p. 33, commonly known as the "Registration Law."    Defendants filed demurrer to the petition, which was overruled, and defendants bring error.

The petition alleged that plaintiff was a resident, citizen, and taxpayer of Oklahoma county, and, after setting out the names of the defendants and the offices respectively filled by them, alleged that the board of county commissioners, unless restrained, would allow and pay out large sums of money upon the order of the county registrar for supplies furnished upon his order for carrying into effect the provisions of said act, and would incur additional expense and let other contracts for supplies, and that the county excise board would include same in the estimate for taxes of the county, which taxes would be collected by the county treasurer—all of which would be done without any authority of law.

The power of the Legislature to enact laws requiring the registration of voters is frankly conceded, as it well may be, for it is expressly conferred by section 6, art. 3 (section 48, Wms. Ann.), Constitution, and was upheld in Pond Creek v. Haskell, 21 Okla. 711, 97 Pac. 338; but the plaintiff seeks to have said act declared unconstitutional because its operation in the enforcement thereof would offend in various particulars against the provisions of both

the state and federal Constitutions. Plaintiff does not show that he will be affected in any way by the act, except that he will be required to pay the tax that would result from the enforcement thereof, and urges that, notwithstanding he has not been deprived of his right of suffrage, nor said right been interfered with, his interest as a taxpayer authorizes him to challenge the validity of the entire legislation.

In *Insurance Co. of North America v. Welch,* 49 Okla. 619, 154 Pac. 48, it was said:

"This court will not pass upon the constitutionality of an act of the Legislature, nor of any of its provisions, until there is presented a proper case in which it is made to appear that the person complaining is entitled to the benefits of said act or about to be subjected to some of its burdens or penalties."

In *Wiley v. Sinkler et al.,* 179 U. S. 58, 21 Sup. Ct. 17, 45 L. Ed. 84, the Supreme Court had under consideration the right of a voter to question the constitutionality of a state law requiring registration as a prerequisite to the right to vote. The plaintiff had brought an action in the Circuit Court of the United States for the District of South Carolina against the board of managers of a general election at a ward and precinct of the city of Charleston to recover damages for wrongfully and wilfully rejecting his vote for a member of the House of Representatives of the United States for the State of South Carolina, and the court held that, without an allegation that plaintiff had registered under the law, his petition did not state a cause of action, and that because it was not alleged that he was ever registered, or ever made any application to be registered, and, so far as appeared, might have been entitled to apply for registration, the plaintiff was not in a position to impugn the constitutionality of the act upon the grounds

urged, which were that it required a longer residence in the county than was required by the Constitution of the state, and otherwise unreasonably impeded the exercise of the constitutional right of voting.

The rule announced in the above decisions is one of sound public policy, and is supported by cogent reasons. Litigants who appeal to the courts should have a personal interest in the question involved, and be entitled to the benefits of any decree that may be rendered therein, or subject to its burdens, and especially in matters of public interest affecting the state at large, where the Legislature seeks to declare a rule of public policy, before the enforcement of such a law is enjoined, there should be presented a case involving the very question which it is sought to have adjudicated by some person who has been denied some benefit or privilege to which he is lawfully entitled, or who is about to be subjected to some of its burdens or penalties, and in which upon the rendition of judgment actual relief may be awarded. If the rule were otherwise, parties having no personal interest in such questions could appeal to the courts and interfere with the enforcement of every measure of public interest because of some objection thereto, although not personally affected thereby. The classes of persons who are said to be affected by the act are not complaining in this proceeding, and plaintiff's right. if he has such, must then depend upon his interest as a taxpayer.

Section 4881, Revised Laws 1910, authorized the issuance of an injunction to restrain the illegal levy and collection of a tax, and this right was recognized by the territorial Supreme Court in the case of *Kellogg v. School Dist.*, 13 Okla. 285, 74 Pac. 110, and has been recognized by this court in the case of *Weatherford Mill. Co. v. Duncan*, 42 Okla. 242, 140 Pac. 1184.

Plaintiff therefore says that under this statute and the decisions cited his right to maintain this action is established, and this contention is sound if section 4881 has not been modified by subsequent legislation. At the regular session of the Legislature of 1915 there was passed an act amending the tax laws of the state, and this act is found as chapter 107, Session Laws 1915, where the Legislature, in addition to prescribing remedies by appeal from the action of the assessor in making the assessment or the equalization as made by the county board of equalization, and making provision for an appeal from the action of the State Board of Equalization, further provided by section 7, p. 149, of said act as follows:

"In all cases where the illegality of the tax is alleged to arise by reason of some action from which the laws provide no appeal, the aggrieved person shall pay the full amount of the taxes at the time and in the manner provided by law, and shall give notice to the officer collecting the taxes showing the grounds of complaint and that suit will be brought against the officer for recovery of them. It shall be the duty of such collecting officer to hold such taxes separate and apart from all other taxes collected by him, for a period of thirty days and if within such time summons shall be served upon such officer in a suit for recovery of such taxes, the officer shall further hold such taxes until the final determination of such suit. All such suits shall be brought in the court having jurisdiction thereof, and they shall have precedence therein; if, upon final determination of  *  *  *  such suit, the court shall determine that the taxes were illegally collected, as not being due the state, county or· subdivision of the county, the court shall render judgment showing the correct and legal amount of taxes due by such person, and shall issue such order in accordance with the court's findings, and if such order shows that the taxes so paid are in excess of the legal and correct amount due, the collecting officer shall pay to such person the excess and shall take his receipt therefor."

The tax which plaintiff apprehends he will be compelled to pay had not been levied at the time of the filing of this suit. The law did not levy the tax, but same can only result from inclusion of the amount thereof in the estimate of the county commissioners and the levy to be made in pursuance thereof by the excise board. The apprehended tax, then, is one whose illegality arises by reason of some action from which the law provides no appeal, and is embraced within the terms of said section 7, and plaintiff's remedy was to await the actual levy of said tax, and then to pay same at the time and in the manner provided by law, and to give the officer collecting it notice that such tax was paid under protest, specifying the grounds of complaint, and that suit would be brought against the officer to recover the amount so paid. The procedure provided by this act furnishes plaintiff with a plain, adequate, and speedy remedy for the correction of any error in the assessment or equalization of his property and for the recovery of any taxes which may be illegally assessed against him, and where such a remedy exists equity will not interfere by injunction with the levy and collection of the revenues of the state government. *Smith v. Board of Com'rs*, 26 Okla. 819, 110 Pac. 669; *Garvin County v. Lindsay Bridge Co.*, 32 Okla. 784, 124 Pac. 324; *Fast et al. v. Rogers, County Treasurer*, 30 Okla. 289, 119 Pac. 241; *Harris et al. v. Smiley*, 36 Okla. 89, 128 Pac. 276.; *Turner et al. v. Ardmore et al.*, 41 Okla. 660, 130 Pac. 1156.

Plaintiff does not urge any equitable grounds for interference other than the alleged unconstitutionality of the law under which the tax will be imposed, and we have just seen that section 7 of chapter 107, Session Laws 1915, provides an adequate and speedy remedy for relief in such cases.

In *Tennessee v. Sneed,* 96 U. S. 69, 24 L. Ed. 610, the Supreme Court of the United States had under consideration the statutes of Tennessee, which were very similar to section 7, now under consideration, and which required the payment of all taxes to the collecting officer and to give notice to the comptroller that same were paid under protest, if the party conceived same to be unjust or illegal, or against any statute or clause of the Constitution of the state, and authorized the bringing of suit to recover such taxes at any time within 30 days, and not thereafter, and made provision for. the payment of any judgment that might be rendered in favor of the plaintiff in said suit. In sustaining such statute the court said:

"If we assume that prior to 1873 the relator had authority to prosecute his claim against the state by mandamus, and that by the statutes of that year the further use of that form was prohibited to him, the question remains whether an effectual remedy was left to him or provided for him. We think the regulation of the statute gave him an abundant means of enforcing such right as he possessed. It provided that he might pay his claim to the collector under protest, giving notice thereof to the Comptroller of the Treasury; that at any time within 30 days thereafter he might sue the officer making the collection; that the case should be tried by any court having jurisdiction, and, if found in favor of plaintiff on the merits, the court should certify that the same was wrongfully paid and ought to be refunded, and the comptroller should thereupon issue his warrant therefor, which should be paid in preference to other claims on the treasury. This remedy is simple and effective. A suit at law to recover money unlawfully exacted is as speedy, as easily tried, and less complicated than a proceeding by mandamus. Every attorney knows how to carry on the former, while many would be embarrassed by the forms of the latter. Provision is also made for prompt payment of the amount by

the state, if judgment is rendered against the officer on the merits.

"We are not cited to any statute authorizing suits to be brought against a state directly, and we know of none. In a special and limited class of cases the United States permits itself to be sued in the Court of Claims; but such is not the general rule. In revenue cases, whether arising upon its internal revenue laws or those providing for the collection of duties upon foreign imports, it adopts the rule prescribed by the State of Tennessee. It requires the contestant to pay the amount as fixed by the government, and gives him power to sue the collector, and in such suit to test the illegality of the tax. There is nothing illegal or even harsh in this. It is a wise and reasonable precaution for the security of the government. No government could exist that permitted the collection of its revenues to be delayed by every litigious man or every embarrassed man, to whom delay was more important than the payment of costs. We think there is no ground for the assertion that a speedy and effective remedy is not provided to enforce the claim set up by the plaintiff."

The enactment of section 7 was but another step in the policy of the state to require all complaints by taxpayers to be settled without resort to the courts, except where expressly authorized, until after the tax is paid and to pursue the remedy provided by statute, which will interfere to the least extent with the enforcement of the revenue laws of the state. Such a remedy as is provided by section 7 was said in the Sneed Case, *supra,* to be adequate and speedy, and in many other cases where provision has been made under the laws of this state affording an aggrieved taxpayer a remedy whereby he may have corrected errors in assessments or equalization of his property such remedy so afforded has been held to be adequate and to justify a denial of the right of the taxpayer to appeal to equity for an injunction restraining the collection of the tax com-

plained of. *Williams v. Garfield Ex. Bank,* 38 Okla. 539, 134 Pac. 863; *Board of Com'rs. v. Tinklepaugh,* 49 Okla. 440, 152 Pac. 1119, and cases cited; *Mellon Co. v. McCafferty,* 239 U. S. 134, 36 Sup. Ct. 94, 60 L. Ed. 181.

The Legislature may prescribe the form of remedy to be pursued in such cases, and may change the same, provided that the aggrieved taxpayer is left an effectual remedy or one is provided for him, which is all that is necessary, and when such remedy is provided same is exclusive. *Tennessee v. Sneed, supra; Shelton v. Platt,* 139 U. S. 591, 11 Sup. Ct. 646, 35 L. Ed. 273.

We are cited to a number of cases holding that the interest of a taxpayer is sufficient to entitle him to test in equity the validity of a law which proposes taxation of his property, but these decisions can hardly be persuasive in view of the fact that the Legislature has expressly enacted that such action may not be sustained, and has provided an effectual remedy in lieu thereof; and its authority to enact such legislation has been upheld by the highest court in the land. Such being true, a review of the cases is not necessary, nor is any effort required to distinguish them from cases cited holding the contrary view.

Should claims for said alleged illegal expenses be presented to and allowed by the board of county commissioners, the plaintiff would have an adequate remedy in the premises by an appeal from the action of the board to the district court, upon giving bond, as required by section 1, c. 117, Session Laws 1915, p. 169, amending section 1640, Rev. Laws 1910. Having a complete and adequate remedy at law under this section, plaintiff was not entitled to relief by injunction against any apprehended action of the board of county commissioners in the allowance of said claims. *Smith et al. v. Board Com'rs,* 26 Okla. 819, 110 Pac. 669;

*Fast et al. v. Rogers*, 30 Okla. 289, 119 Pac. 241; *Garvin County v. Lindsay Bridge Co.*, 32 Okla. 784, 124 Pac. 324; *Turner et al. v. City of Ardmore et al.*, 41 Okla. 660, 130 Pac. 1156.

From the foregoing it is apparent that the court committed error in overruling defendants' demurrer to plaintiff's petition, and the judgment is accordingly reversed, and the cause dismissed.

All the Justices concur.